WATERFALL, ECONOMIDIS, CALDWELL, HANSHAW &
VILLAMANA, P.C.
Williams Center, Suite 800
5210 E. Williams Circle
Tucson, AZ  85711
Phone: (520) 790-5828
Fax: (520) 745-1279

Kasey C. Nye (SB #020610)
knye@waterfallattorneys.com
Cindy K. Schmidt (SB #029659)
cschmidt@waterfallattorneys.com
*Attorneys for Debtor/ Plaintiff*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| In re: Breault Research Organization, Inc.<br><br>Debtor. | Case No.: 4:19-bk-8754<br><br>Chapter 11<br><br>Adv. Proc. No.: |
| Breault Research Organization, Inc.<br><br>Plaintiff,<br>v.<br><br>4400 Broadway LLC<br><br>Defendant. | **COMPLAINT FOR TURNOVER OF PROPERTY PURSUANT TO 11 U.S.C. §542(a)**<br><br>**AND**<br><br>**PRELIMINARY AND PERMANENT INJUNCTION** |

Debtor/plaintiff Breault Research Organization, Inc. ("BRO") seeks a final judgment (1) directing defendant 4400 Broadway LLC ( "Landlord") to turn over property of the estate pursuant to 11 U.S.C. §542(a); and (2) enjoining Landlord from refusing to turn over property pursuant to Fed. R. Bankr. P. 7065 (incorporating Fed. R. Civ. P. 65).

BRO brings this action in accordance with Fed. R. Bankr. P. 7001(1), 7001(7), and 7003 and alleges as follows:

## I. BRO's Claims Are Procedurally Proper

### A. This Court Has Jurisdiction

1. The United States Bankruptcy Court for the District of Arizona has jurisdiction over title 11 cases, including civil proceedings arising under title 11, or arising in or relating to cases under title 11. *See* 28 U.S.C. §1334(a), (b); 28 U.S.C. §157(a); General Order 01-15, United States District Court of Arizona (filed June 29, 2001) (standing order of referral).

2. On July 16, 2019, BRO filed a voluntary petition for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Arizona, commencing case *In re: Breault Research Organization, Inc.*, Case No. 4:19-bk-8754 (the "Bankruptcy Case").

3. BRO's adversary claims, which seek a final judgment (1) directing Landlord to turn over property of the estate pursuant to 11 U.S.C. §542(a); and (2) enjoining Landlord from refusing to turn over property, constitute core proceedings under 28 U.S.C. §157(b)(2)(E) and (M) and therefore lie within this Court's jurisdiction. *See* 28 U.S.C. §157(b)(1) (authorizing bankruptcy judge to hear and enter final orders in core proceedings).

4. Furthermore, the court in which a title 11 case is pending has exclusive jurisdiction over property of an estate. *See* 28 U.S.C. §1334(e)(1).

5. Therefore, because BRO's Bankruptcy Case is pending in this Court, this Court has exclusive jurisdiction over the personal property that is the subject of this turnover proceeding.

6. Finally, BRO consents to entry of a final order or judgment by the United States Bankruptcy Court for the District of Arizona. *See* Fed. R. Bankr. P. 7008.

B. <u>Tucson Is The Correct Venue</u>

7. Under 28 U.S.C. §1408, a case under title 11 may be commenced in the district in which the principal place of business, or principal assets, of the entity that is the subject of the case have been located for one hundred and eighty days immediately preceding commencement of the case.

8. Venue is proper in the United States Bankruptcy Court for the District of Arizona because BRO's principal place of business, and principal assets, have been located in Arizona for over three decades immediately preceding commencement of the Bankruptcy Case, which was filed pursuant to 11 U.S.C. §301(a), and commencement of this turnover proceeding, which was filed pursuant to 11 U.S.C. §542(a).

C. <u>BRO Has Standing As Debtor In Possession</u>

9. BRO is a debtor in possession under 11 U.S.C. §1101(1).

10. As the debtor in possession, BRO has "all the rights . . . and powers, and shall perform all the functions and duties . . . of a trustee," including but not limited to representing the estate, operating BRO's business, using property of the estate, and bringing suit to recover estate property. *See* 11 U.S.C. §§ 323(b), 363(c)(1) and (l), 1107(a), and 1108.

11. Accordingly, BRO has standing to sue to recover possession of property for use in BRO's business operations.

## II. Facts Giving Rise To This Turnover Proceeding

### A. BRO Is A Premiere Optical Engineering Firm With A Global Reach

12. BRO is a Tucson-based engineering firm that has been organized as a for profit corporation under Arizona law since 1979.

13. BRO is a premier provider of optical engineering software, training products, and turn-key hardware solutions developed and supported by a world-class staff.

14. BRO's optical software products and training courses help other engineers turn creative visions into working prototypes.

15. BRO's staff works on state of the art projects for Fortune 500 companies, research institutions, and preeminent government labs.

16. With over three decades of innovation, BRO has contributed to the success of engineering projects for thousands of clients.

### B. The 4400 East Broadway Lease

17. On or about November 18, 2015, Landlord and BRO entered into an Office Building Lease (the "Lease") for approximately 4,021 ft$^2$ of lab/storage space (Suite 010) and approximately 8,786 ft$^2$ of office space (Suite 500) at 4400 East Broadway, Tucson, Arizona 85711 (the "Premises"). (*See* Lease, Ex. [A] at ¶¶1-2).

18. The original term of the Lease was seven and a half years and BRO had an option to extend the original term by one, five-year term. (*Id*. at ¶¶3, 8).

19. It was estimated that BRO would be in possession of the Premises from February 2016 through August 2023. (*Id.* at ¶3).

20. Under the Lease, rent started at $15,154.95 per month in September 2016 with graduated payments increasing to $18,014.47 per month by February 2023. (*Id.* at Rider – Rental Schedule).

21. BRO was also responsible for other charges and costs under the Lease, including making a $15,533.62 security deposit and paying for certain taxes, operating expenses, utilities, insurance, and repairs. (*Id.* at ¶¶5-7, 11, 16-18).

22. Any failure by BRO to pay rent or costs within five days after the due date would constitute a default and breach under the Lease. (*Id.* at ¶¶5, 24(c)).

23. Upon any uncured material default or breach by BRO, Landlord would have the right, in relevant part, to terminate the Lease by written notice. (*Id.* at ¶25(a)).

24. In the event the Lease was terminated due to a default by BRO, and Landlord asserted a landlord's lien for rent on BRO's personal property located on the Premises, the Lease prohibited BRO from removing its personal property from the Premises without Landlord's prior written consent. (*Id.* at ¶31).

25. On or about March 18, 2016, Landlord and BRO entered into a First Amendment to Lease ("First Amendment") pursuant to which the leased space was expanded to 13,219 ft$^2$ and rent was adjusted to $15,520.71 per month for September 2016 with graduated payments increasing to $18,415.86 per month by February 2023. (*See* First Amendment, Ex. [B] at ¶6).

C. <u>Landlord Wrongly Possesses BRO's Personal Property, In Addition To The United States Government's And Other Customers' Personal Property</u>

26. Sometime on or around early or mid-2019, BRO fell behind in paying Landlord for rent and/or other costs under the Lease.

27. Sometime on or around early or mid-2019, Landlord and BRO agreed that Landlord would remodel and re-lease a substantial portion of the Premises and that, once released, BRO would no longer be responsible for paying rent on the re-leased space.

28. As of the date of this filing, Landlord has never terminated the Lease by written notice pursuant to ¶25(a).

29. Nonetheless, on or about June 26, 2019, Landlord changed the locks to the Premises, thus preventing BRO from accessing the Premises or taking possession of BRO's, or BRO's customers,' personal property located on the Premises. BRO's personal property, including BRO's customers' personal property, located on the Premises and under Landlord's control is collectively referred to herein as the "Turnover Property."

30. By taking possession of the Turnover Property, Landlord violated Lease ¶31, which states that only if the Lease is terminated may Landlord assert lien rights or otherwise prohibit BRO from removing its personal property from the Premises.

31. Landlord's actions also violated A.R.S. § 33-362(B) because Landlord seized personal, intellectual, and proprietary property owned by persons or entities other than BRO, including customer- and government-owned equipment and related files, which were located on the Premises for the purpose of BRO performing optics-related services or

repairs on, or relating to, such customers' property. *See* A.R.S. § 33-362(B) ("property of any other person, although found on the premises, shall not be liable therefore").

32. For example, as recently as July 11, 2019, an attorney for one of BRO's customers informed BRO that the customer was trying to recover from Landlord the customer's original equipment that had been shipped to BRO, along with certain optics-related equipment that the customer had requested BRO manufacture specifically for use with the original equipment, because both the customer's original and newly-manufactured property is being wrongly held by Landlord in violation of the law.

33. The Turnover Property includes but is not limited to BRO's computers and other IT equipment, project files, administrative and accounting records, engineering hardware, project materials and other related tangibles, office furniture, and personal effects.

34. The Turnover Property includes sensitive, confidential, and proprietary information relating to customers and projects, including information deemed confidential by the United States Department of Defense.

35. It is essential that BRO be given access to, and possession of, the Turnover Property so that it can maintain the confidentiality of sensitive information and data, operate the business, complete pending work orders and projects, and continue to sell and fulfill optics engineering and related software products and services.

36. Despite a demand by BRO, Landlord has not turned over possession of the Turnover Property, but rather has only generally represented that it is willing to

release unspecified documents or information covered by national security or other governmental restrictions, and nothing else.

### III. BRO Seeks A Turnover Judgment and Injunction In This Proceeding

37. BRO filed for Chapter 11 bankruptcy on July 16, 2019. Upon filing for bankruptcy, BRO's personal property became property of the estate pursuant to 11 U.S.C. § 541.

38. Pursuant to 11 U.S.C. § 363(c)(1), BRO has the authority to operate the business and enter into transactions in the ordinary course of business. This necessarily requires that BRO regain access to the Premises and obtain possession of the estate's property, and BRO's customers' property, located on the Premises.

39. Here, access to the Premises and release of the Turnover Property has significant value to estate, as BRO is unable to operate its business, complete pending orders, enter into new transactions, or continue to offer optical engineering and related services to clients without accessing the Premises and possessing the Turnover Property.

**Count I**

**(Turnover under 11 U.S.C. § 542)**

40. BRO incorporates the foregoing allegations as though fully set forth herein.

41. The Turnover Property is property of the estate under 11 U.S.C. § 541, or is otherwise BRO's customers' property that is necessary to the operation of the estate's business under 11 U.S.C. § 363(c)(1).

42. Landlord has exclusive possession over the Turnover Property.

43. Despite demand, Landlord has refused to release the Turnover Property to BRO as required by 11 U.S.C. § 542.

44. Despite demand, Landlord has refused to grant BRO access to the Premises.

45. Landlord's refusal to grant access to the Premises and release the Turnover Property to BRO has necessitated this action, thus causing the estate to incur needless fees and costs.

## Count II

### (Preliminary and Permanent Injunction)

46. BRO incorporates the foregoing allegations as though fully set forth herein.

47. Landlord's refusal to grant BRO access to the Premises or to release possession of the Turnover Property causes immediate and direct harm to the bankruptcy estate.

48. BRO has no adequate remedy at law because the bankruptcy code provides no damages' remedy for Landlord's refusal to grant access to the Premises or to release the Turnover Property to BRO, and if continued, Landlord's actions will cause the estate irreparable harm, damage, and injury.

49. BRO requests that Landlord be preliminarily and permanently enjoined from denying BRO access to the Premises and refusing to release the Turnover Property to BRO.

50. BRO requests that Landlord be ordered to immediately grant BRO access to the Premises and release the Turnover Property to BRO.

WHEREFORE, BRO prays for the following relief:

    a. Judgment in favor of BRO and against Landlord on all claims raised in this Complaint;

    b. An Order under 11 U.S.C. § 542 directing that Landlord immediately grant BRO access to the Premises and release possession of the Turnover Property to BRO;

    c. A Preliminary Injunction under Fed. R. Civ. P. 65, as made applicable to this action under Fed. R. Bankr. P. 7065, enjoining Landlord from denying BRO immediate access to the Premises or possession of the Turnover Property;

    d. A sanction against Landlord for refusing to grant BRO access to the Premises or release the Turnover Property to BRO without just cause, in the form of a Judgment for attorneys' fees and taxable costs incurred bringing this action; and

    e. Such other relief as the Court deems just under the circumstances.

DATED July 16, 2019.

                      WATERFALL, ECONOMIDIS, CALDWELL,
                      HANSHAW & VILLAMANA, P.C.

                      By: */s/ Kasey C. Nye (#020610)*
                          Kasey C. Nye
                          Cindy K. Schmidt
                          *Attorneys for Debtor/Plaintiff*