1  WATERFALL, ECONOMIDIS, CALDWELL, HANSHAW &
   VILLAMANA, P.C.
2  Williams Center, Suite 800
   5210 E. Williams Circle
3  Tucson, AZ 85711
   Phone: (520) 790-5828
4  Fax: (520) 745-1279

5  Kasey C. Nye (SB #020610)
   knye@waterfallattorneys.com
6  Cindy K. Schmidt (SB #029659)
   cschmidt@waterfallattorneys.com
7  *Attorneys for Debtor/ Plaintiff*

8

**UNITED STATES BANKRUPTCY COURT**

9

**DISTRICT OF ARIZONA**

10

| | |
|---|---|
| In re: Breault Research Organization, Inc. | Chapter 11 |
| Debtor. | Case No.: 4:19-bk-08754-BMW |
| | EMERGENCY MOTION FOR AUTHORITY TO PAY PRE-PETITION WAGES |

16    Debtor and Debtor in Possession, Breault Research Organization, Inc. ("**BRO**" or

17  the "**Debtor**") hereby respectfully requests entry of entry of an interim order ("**Interim**

18  **Order**") and final order (the "**Final Order**"): (i) authorizing the BRO to pay, in its sole

19  discretion, prepetition employee wages and salaries as well as related obligations (the

20  "Payroll Obligations") collectively up to the statutory cap set forth in section 507(a)(4) of

21  title 11 of the United States Code (the "Bankruptcy Code") per employee; (ii) authorizing

22  the BRO to honor, in its sole discretion and consistent with the ordinary course of business,

23  certain expense reimbursement obligations owed to employees (the "**Business Expense**

24  **Obligations**"), all other paid time off obligations (the "**PTO Obligations**"), and sick time

25  obligations (the "**Sick Time Obligations**"); BRO seeks this relief pursuant to sections

26  105(a), 363(b), and 507(a) of the Bankruptcy Code and Rule 6003 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules").

This Motion is supported by the attached Memorandum of Points and Authorities, the testimony in the contemporaneously filed Pobloske Declaration, and the entire record in these Reorganization Cases.

DATED July 17, 2019.

WATERFALL, ECONOMIDIS, CALDWELL, HANSHAW & VILLAMANA, P.C.

By: _/s/_____
     Kasey C. Nye
     Cindy K. Schmidt
     *Attorneys for Debtor/Plaintiff*

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. JURISDICTION

This Court has jurisdiction to consider this motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The venue of this case in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The relief requested herein is predicated upon Bankruptcy Code §§ 105(a), 363(b), and 507(a).

## II. FACTUAL BACKGROUND

### A. The Debtor

BRO is an optical engineering firm providing optical software products, software maintenance and tech support, and training courses that help engineers turn creative visions into working prototypes. The company's own engineers work on state-of-the-art projects for Fortune 500 companies, research institutions, and top government labs. BRO has three primary business lines: (1) Software Development and Sales; (2) Software Maintenance, Technical Support and Training; and (3) Engineering Services.

**(1) Software Development and Sales**

BRO's software offerings include ASAP NextGen and APEX. Since 2012, on average software sales have accounted for 19% of BRO's annual revenue. ASAP®, the Advanced Systems Analysis Program, is used by optical engineers and optical systems designers in 35 countries for virtual prototyping with great accuracy and confidence ASAP NextGen uniquely models the finest details of optical systems, which means ASAP users can depend on their simulations to mirror real-world performance. ASAP analyses validate designs and support smooth transitions to manufacturing.

APEX is an optical engineering application tailor-made to meet the requirements of today's product design teams, whether big or small, and is opening up new possibilities for the future of optics. Because APEX is an add-in to the industry-standard SolidWorks® — a solid modeling computer-aided design and computer-aided engineering computer program 3D-modeling environment — it allows optical and mechanical engineers to work side-by-

side on the same files. BRO also provides optical engineers ReflectorCAD,® a paradigm-shifting reflector design tool that allows users to make graphical adjustments to the luminous intensity patterns corresponding to individual reflector segments. The program does the rest.

### (2) Software Maintenance, Technical Support and Training

BRO provides ongoing technical software support and training to purchasers of its APEX, ASAP and ReflectorCAD software packages to optical engineers and designers in 35 countries.  On average, software maintenance and training has accounted for approximately 48% of Bro's annual revenue.

### (3) Engineering Services

In addition, BRO provides professional optical engineering services to solve optics-related problems and created innovative products for thousands of companies worldwide. BRO's engineering team is diverse. On average Engineering Services generates approximately 34% of BRO's annual revenue.  BRO employs optical, mechanical, and electrical engineers holding advanced degrees. They come from the nation's top labs, universities, and corporations. The result is a remarkably diverse and knowledgeable team of leading experts, which rivals in-house R&D groups at large corporations.  Examples include

- Automotive. Using BRO's suite of illumination software products, and an extensive library of source models, BRO engineers lead development of new and efficient automotive illumination systems...

- Bio-optics. Using BRO's software tools, we can simulate entire biophotonic systems, including devices for drug discovery exercises, molecular biology research, clinical diagnostics, and surgical applications...

- Consumer Electronics. From optimizing LED lighting for toys and computers, to designing lightpipes for scanners, BRO's engineers have a wealth of experience in optics for consumer products....

4

- Display. BRO designs, analyzes, and improves performance of backlit displays. Our experience includes flat-panel displays such as Liquid Crystal Displays (LCDs) and plasma, projection systems based on micro-displays including Digital Light Projectors (DLPs) and mini-LCDs, and heads-up displays. BRO's engineers are well-versed in all aspects of display engineering...

- Optical Metrology. Using BRO's own ASAP® Optical Software, our engineers model many types of optical metrology equipment including numerous types of interferometers...

- Telecommunications. BRO's engineers design and build state-of-the-art systems for telecommunications. We model fiber coupling, birefringence, free-space propagation, gradient index materials, and much more.

BRO has been recognized by the director of the U.S. Patent and Trademark Office for technology export achievements, received Wells Fargo Copper Cactus Awards for Best Place to Work and Community Service, was named Arizona's 2010 Small Business Innovator of the Year, and has been commended by United States Secretary of Homeland Security Janet Napolitano for excellence in technology development.

**B. This Reorganization.**

    1. <u>Events Leading to this Reorganization</u>.

BRO's revenue sources can be broadly divided into three business lines: 1. Software Sales, 2. Software Maintenance/Technical Support, and 3. Engineering Services. As discussed above, the Software is ASAP NextGen and APEX, which is an add-in for the ubiquitous Solidworks engineering prototype software. Sales of software licenses also, typically, result in maintenance and tech support contracts, which form a major share of BRO's Revenue.

BRO first began developing APEX in 2008, because it understood Solidworks to represent a large and robust market. Initially, BRO release a preliminary version of APEX

in 2010, but only completed the final release of the complete software in June 2016. All told, the development of APEX took 34,841 hours of work by BRO engineers, costing approximately $1.2 million of salaries. While Solidworks gave BRO very positive reviews of the software, BRO has been unable to successfully develop sales channels for APEX. As a result, BRO's return on investment has not been what BRO anticipated.

BRO's focus on developing APEX, took resources away from developing a major release on BRO's primary software product ASAP. There was a major release of ASAP in 2014, a minor release in 2015, the no significant updates until 2017. In 2013 and 2014, several of BRO's competitors in this software market issued software releases that allowed them to significantly eat into BRO's market share.

As a result, since 2012, BRO has experienced significant declines in revenue in software sales as well as maintenance contracts. The decline in revenue is illustrated in the following chart:



In addition, when ASAP NextGen and APEX were released, BRO lacked adequate resources for marketing the software.  As revenue declined, BRO was unable to reduce costs sufficiently, and relied on financing arrangements.  Some through commercial loans, but some through shareholder and employee loans.

In March of 2018, BRO's founder and namesake, Bob Breault, transferred his majority ownership to Matthew Pobloske, who stepped in as Chief Executive Officer.  Since taking over BRO, Poblakse has undertaken significant cost cutting measure, and after 15 months of work has BRO operating at nearly a break-even level funding operations.  BRO's engineering services department is anticipating starting work on a large government contract that will improve BRO's stability and profitability.

One of the key factors in right sizing expenses to income related to BRO's office lease at 4400 E Broadway.  BRO attempted to work with the landlord to reduce its footprint, and rent.  But even with reduced square footage and rent the costs were unsustainable.  BRO began the process of moving to a tech park space.  The landlord, however commenced a lockout, which ultimately triggered the filing of this reorganization case.

The purpose of this case is to file and confirm a plan of reorganization that will allow it to resolve certain historical balance sheet problems, while at the same time facilitating new investment into a BRO so that the company is adequately capitalized, can adequately market its software, and can grow its engineering services business.

**C.    Payroll Obligations**

BRO's ability to reorganize and continue to provide quality optical engineering services and software support to its customers depends in part upon the continued efforts of its approximately eleven employees.

BRO pays payroll twice per month on the 15th and the 30th two weeks in arrears.  So the July 15, 2019 payroll paid for work performed through June 30, 2019, and the July 30, 2019 payroll will pay for work performed through July 15, 2019.  In addition, BRO had

accumulated several past due payrolls. Since Poblaske took over the Debtor, it has issued payroll when BRO had sufficient funding in the bank to pay payroll and payroll tax obligations.

As of the petition date, July 16, 2019, the Debtor owes employees prepetition payroll that came due, 7/15/19, 6/30/2019, 6/15/2019, 5/31/2019, and 5/15/2019. In addition the payroll that comes due July 31, 2019 is for services through July 15, 2019 which occurred pre-petition. The amounts due to each employee 7/15, 7/31 and in total, as well as the amounts proposed to be paid post-petition as priority claims are identified on Exhibit A attached hereto and incorporated by reference.

In addition, employees have accrued significant vacation and sick leave obligations which are described on Exhibit B attached hereto. The Debtor is proposing to honor such vacation an sick leave obligations up to the priority amount of $13,650, in the ordinary course of business.

## III. RELIEF REQUESTED

In an effort to prevent unnecessary disruption to BRO' operations, including maintaining patient safety, or a decline in employee morale that can sometimes accompany a bankruptcy filing, BRO request that this Court: (i) authorize BRO to pay, in their sole discretion, prepetition Payroll Obligations, collectively up to the statutory cap set forth in Bankruptcy Code § 507(a)(4) per employee; and (ii) authorize BRO to honor, in their sole discretion and consistent with the ordinary course of business, Business Expense Obligations, PTO Obligations, and Sick Time Obligations.

## IV. LEGAL ARGUMENT

### A. The "Necessity of Payment" Doctrine and §§ 105(a) and 363(b)Permit the Payment of the Payroll Obligations and PTO Cashout Obligations

By this motion, and pursuant to Bankruptcy Code §§ 105(a) and 363(b) and the "necessity of payment" doctrine, BRO seek authority to pay prepetition Payroll

Obligations. In addition, BRO seek authority to honor, consistent with the ordinary course of business, any Business Expense Obligations, PTO Obligations and Sick Time Obligations.

The language of § 363(b)(1) provides in pertinent part: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate…" 11 U.S.C. § 363(b)(1). Section 105(a) further provides in relevant part: "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Accordingly, this Court has authority to permit immediate payment of the employee obligations, which are necessary to preserve and enhance the value of BRO' estate for the benefit of all creditors. See *In re Chateaugay Corp.*, 80 B.R. 279, 286-88 (S.D.N.Y. 1987); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175-76 (Bankr. S.D.N.Y. 1989) (authorizing payment of pre-petition wages, salaries, reimbursable business expenses and health benefits); *In re Adams Apple, Inc.*, 829 F.2d 1484, 1490 (9th Cir. 1987).

The "doctrine of necessity" "is a well-settled doctrine that recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay prepetition claims where such payment is essential to the continued operation of the debtor." *In re Ionosphere Clubs, Inc*., 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989). This District has stated that the debtor must meet a three-part test:

> (1) It must be critical that the debtor deal with the claimant; (2) unless it deals with the claimant, the debtor risks the probability of harm, or alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's pre-petition claim; and (3) there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

*In re Berry Good, LLC*, 400 B.R. 741, 747 (Bankr. D. Ariz. 2008).

BRO's employees are essential to BRO's engineering services and software development and maintenance operations and to the success of BRO's business and reorganization. Consequently, it is critical that BRO continue to pay the Payroll Obligations. If the checks issued and fund transfers requested for the Payroll Obligations are not honored, BRO's employees might suffer extreme personal hardship and certain of them might be unable to pay their daily living expenses.

Authorizing, but not directing, BRO to pay the Payroll Obligations is in the best interests of BRO, its customers, creditors, and other parties in interest, and should enable BRO to make a smooth transition into chapter 11 without any disruption of business operations.

As of the Petition Date, BRO estimate the aggregate amount owed on account of Payroll Obligations and PTO Obligations owed to current employees to approximate $243,715.20 and $129,022.83, respectively. BRO' estate and creditors should not be prejudiced by this relief because the aggregate payment on account of the Payroll Obligations and PTO Obligations to an individual employee will not exceed the statutory priority limit of $13,650 per employee under Bankruptcy Code § 507(a)(4). Therefore, granting relief to pay the Payroll Obligations and PTO Cashout Obligations should only affect the timing, not the amount of payments that employees are entitled to.

**B.      BRO Seeks to Honor, Consistent With the Ordinary Course of Business, Business Expense Obligations, PTO Obligations and Sick Time Obligations**

Failure to honor other outstanding obligations, such as Business Expense or Sick Time Obligations, could negatively impact employee morale. A decline in employee morale at this critical time could have devastating impacts on patients who rely on quality care, BRO' ability to reorganize, the value of BRO' assets and business and, ultimately, the outcome of this case. Moreover, it would be inequitable to require BRO' employees to personally bear business expenses that BRO' employees believed would be reimbursed in accordance with BRO' prepetition practices.

The outstanding aggregate amount of these obligations is modest in comparison to the size of BRO' estate. Moreover, many of these obligations are not immediately due but, rather, would be satisfied over an extended period of time.

Furthermore, failure by BRO to continue to honor such obligations in the ordinary course of business could potentially result in claims being asserted against BRO' officers and directors. Not only would such claims against BRO' officers and directors distract key employees during this critical time when their efforts should be focused on BRO' reorganization and patient care, but such officers and directors could be entitled to indemnification by the estate.

As stated above, BRO intend to continue to honor other obligations such as Business Expense Obligations, PTO Obligations, and Sick Time Obligations. BRO further intend to deduct and remit the Withholdings consistent with the ordinary course of its business.

**V.    NOTICE**

Notice of this motion will be given to: (a) the United States Trustee for the District of Arizona; and (b) BRO' twenty (20) largest unsecured creditors. The Debtor submit that, under the circumstances, no other or further notice is required.

**VI.    CONCLUSION**

WHEREFORE, BRO respectfully request that the Court enter an Interim Order, substantially in the form annexed hereto, and Final Order granting the relief requested in the motion and such other and further relief as may be just and proper.

DATED July 17, 2019.

WATERFALL, ECONOMIDIS, CALDWELL, HANSHAW & VILLAMANA, P.C.

By: _/s/ Kasey C. Nye (AZ Bar 20160)_
      Kasey C. Nye
      Cindy K. Schmidt
      *Proposed Attorneys for Debtor*



Exhibit A

Company: Breault Research Organization Inc

| Employee | | Gross Past Due through 6/30/19 | Payroll Due 7/15/19 For work through 6/30/2019 | Payroll Due 7/31 For work through 7/15/2019 | Amt to be paid under Proposed Order | Unsecured Claim Amount |
|---|---|---|---|---|---|---|
| Active Employees | | | | | | |
| Breault, Robert | Salary | $15,571.08 | $3,892.77 | $3,892.77 | $13,650.00 | $9,706.62 |
| Breeding, Mary | Hourly | $5,220.00 | $1,200.00 | $1,200.00 | $7,620.00 | $0.00 |
| Donnelly III, William | Salary | $16,466.68 | $4,116.67 | $4,116.67 | $13,650.00 | $11,050.02 |
| Fink, Mark | Salary | $21,926.68 | $5,481.67 | $5,481.67 | $13,650.00 | $19,240.02 |
| Garcia, Kevin | Salary | $24,446.68 | $6,111.67 | $6,111.67 | $13,650.00 | $23,020.02 |
| Hall, Wayne | Hourly | $6,560.00 | $1,600.00 | $960.00 | $9,120.00 | $0.00 |
| Hart, Donna | Salary | $10,400.00 | $2,600.00 | $2,600.00 | $13,650.00 | $1,950.00 |
| Herlocker, Jon | Salary | $16,666.68 | $4,166.67 | $4,166.67 | $13,650.00 | $11,350.02 |
| Juozapaitis, Linda | Salary | $14,285.32 | $3,571.33 | $3,571.33 | $13,650.00 | $7,777.98 |
| McClellan, Paul | Salary | $13,346.68 | $3,336.67 | $3,336.67 | $13,650.00 | $6,370.02 |
| Peterson, Gary | Salary | $18,207.00 | $4,551.75 | $4,551.75 | $13,650.00 | $13,660.50 |
| | | $163,096.80 | $40,629.20 | $39,989.20 | $139,590.00 | $104,125.20 |

Company: Breault Research Organization Inc

| | Accrued Vacation Thru 7/10/19 hours | Accrued sickpay thru 7/10/19 hours | Hourly rate | Total accrued time off |
|---|---|---|---|---|
| Active Employees | | | | |
| | | | | |
| Breault, Robert | 154.25 | 96 | $44.92 | $11,241.23 |
| Breeding, Mary | 20.25 | 59.5 | $30.00 | $2,392.50 |
| Donnelly III, William | 148.5 | 83 | $47.50 | $10,996.25 |
| Fink, Mark | 345 | 96 | $63.25 | $27,893.25 |
| Garcia, Kevin | 154 | 74 | $69.71 | $15,893.88 |
| Hall, Wayne | Wayne does not get benefits | | | |
| Hart, Donna | 417.5 | 88 | $30.00 | $15,165.00 |
| Herlocker, Jon | 152.25 | 96 | $48.08 | $11,935.86 |
| Juozapaitis, Linda | 185 | 96 | $40.40 | $11,352.40 |
| McClellan, Paul | 282.5 | 96 | $38.50 | $14,572.25 |
| Peterson, Gary | 136.33 | 8 | $52.52 | $7,580.21 |
| | | | | $129,022.83 |