Kasey C. Nye (#020610)
knye@waterfallattorneys.com

WATERFALL ECONOMIDIS CALDWELL
HANSHAW & VILLAMANA, P.C.
5210 E. Williams Circle, Suite 800
Tucson, AZ 85711
Telephone (520) 790-5828
Facsimile (520) 745-1279
*Attorneys for Breault Research Organization, Inc.,*

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re<br><br>BREAULT RESEARCH ORGANIZATION, INC., an Arizona corporation,<br>            Debtor. | Chapter 11<br><br>Case No. 4:19-bk-08754-BMW<br><br>**PLAN OR REORGANIZATION DATED MARCH 17, 2020** |

## Article I.    SUMMARY OF PLAN

This Plan of Reorganization (the "**Plan**") under chapter 11 of the Bankruptcy Code (the "**Code**") proposes to pay creditors of BREAULT RESEARCH ORGANIZATION, INC., an Arizona corporation ("**Breault**" or "**Debtor**"), from net operating proceeds over the next 48 months. .

This Plan provides for 2 classes of secured claims, and 3 class of unsecured claims. Non-insider Unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately 53 cents on the dollar. This Plan also provides for the payment of administrative and priority claims in full in accordance with the Bankruptcy Code.

All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

## Article II. CLASSIFICATION OF CLAIMS AND INTERESTS

| Class | Description of Class | Impaired (Y/N) | Entitled to Vote (Y/N) |
|---|---|---|---|
| 1 | All allowed claims entitled to priority under § 507 of the Code (except administrative expense claims under § 507(a)(2), and priority tax claims under § 507(a)(8)). | Y | Y |
| 2 | The claims Dodge Capital, LLC secured by a lien against an optics table, to the extent allowed as a secured claim under § 506 of the Code. | Y | Y |
| 3 | The claims of the Eukaipia Ventures, LLC to the extent allowed as a secured claim under § 506 of the Code | Y | Y |
| 4 | The claims of non-insider unsecured creditors. | Y | Y |
| 5 | The claims of insider unsecured creditors. | N | N |
| 6 | The equity interest holders. | Y | Y |

## Article III. TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEE'S FEES, AND PRIORITY TAX CLAIMS

Unclassified Claims. Under section §1123(a)(1), administrative expense claims, and priority tax claims are not in classes. The following is the treatment of such unclassified claims:

Section 3.01 <u>Administrative Expense Claims</u>. Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the effective date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

Section 3.02 <u>Priority Tax Claims</u>. Each holder of an allowed priority tax claim will be paid

in equal monthly installments so that they are paid in full within plus statutory interest within 60 months of the Petition Date. The Reorganized Debtor, may elect to partially or fully prepay at any time on or after the Effective Date.

Section 3.03  United States Trustee Fees. All fees required to be paid by 28 U.S.C. §1930(a)(6) ("**U.S. Trustee Fees**") will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the Effective Date.

## Article IV.   TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

Section 4.01  Class 1- Priority Claims.

(a) Description. Class 1 consists of all allowed claims entitled to priority under § 507 of the Code (except administrative expense claims under § 507(a)(2), and priority tax claims under § 507(a)(8)).

(b) Treatment**.** Class 1 is impaired by this Plan.

  **(i)** Each holder of an allowed Class 1 Priority Claim will be paid quarterly distributions of a pro rata share of all of the Disposable Income of the Debtor until paid in full plus interest at the federal judgment rate in effect on the plan effective date.

Section 4.02   Class 2. Claims Dodge Capital LLC secured by an Optics Table.

(a) Description**.** Class 2 consists of the claims to the extent allowed under Code § 506 arising from that certain $7,500 loan from July 12, 2019 (the "**Class 2 Loan**") and secured by that certain Starret Granite 4X10 Optics Table, 72" X48" x 12" US Lab granite Surface Plate Grade A (0.002" flatness, color Charcoal, proceeds and replacements, the ("Class 2 Collateral"), perfected by that UCC-1 filed with the Arizona Secretary of State on July 12, 2019 at File Number:2019-002-9321-6 .

(b) Treatment**.** Class 2 is impaired by this Plan.

  (i) The Reorganized Debtor will pay the allowed Class 2 Claim in full in 36 monthly installments of principal and interest at 9% per annum. The Reorganized Debtor may prepay the Class 2 claim at any time without penalty.

  (ii) The holder of the Class 2 Claim will retain its liens in the Class 2 Collateral until paid in full.

Section 4.03  Class 3- Claims of the Eukaipia Ventures, LLC.

(a) Description**.** Class 3 consists of the claims of the Eukaipia Ventures, LLC to the extent allowed under Code § 506. Class 3 is an insider claim asserted by an entity owned and controlled by the Debtor's former CFO, Charles L Luebbering. The original loan from 2007, was secured by certain whole life insurance policies.

Notwithstanding defaulting nearly immediately, Eukaipia failed to take any steps to enforce the loan.   After the statute of limitations elapsed, in February 2016 Lubbering, caused the Debtor to enter into a new agreement that expanded his security interest.   The Debtor asserts that the lien granted to Eukaipia was a fraudulent transfer, for which the debtor did not receive adequate consideration. The Debtor further asserts that is has a breach of fiduciary duty claim against

(b) <u>Treatment</u>. Class 3 is impaired by this Plan.

  (i) The Debtor will settle and release its claims against Eukaipia Venture and Charles Lubbering in exchange for the release and discharge of the Class 3 claims.  The liens held by Eukaipia Ventures will be deemed satisfired and released.

Section 4.04  <u>Class 4- The claims of non-insider unsecured creditors</u>.

(a) <u>Description</u>. Class 4 consists of the unsecured non-priority claims of non-insiders to the extent allowed under Code § 502.

(b) <u>Treatment</u>. Class 4 is impaired by this Plan.

  (i) After Class 1 claims are paid in full, holders of allowed Class 4 claims will be paid quarterly distributions of a pro rata share of all of the Disposable Income of the Debtor until the Class 4 Claims have received 5% if their allowed claims. Then holders of Class 4 claims will be paid quarterly distributions of a pro rata share of 85% of the Debtor's Disposable Income until the earlier of 48 months after the Plan Effective Date, or Class 4 the holders of Class 4 claims have receive 15% of their allowed claims. Then holders of Class 4 claims will be paid quarterly distributions of a pro rata share of 70% of the Debtor's Disposable Income until the earlier of 48 months after the Plan Effective Date, or Class 4 the holders of Class 4 claims have receive 30% of their allowed claims.  Then holders of Class 4 claims will be paid quarterly distributions of a pro rata share of 50% of the Debtor's Disposable Income until the earlier of 48 months after the Plan Effective Date, or the holders of Class 4 claims have receive 50 % of their allowed claims. Then holders of Class 4 claims will be paid quarterly distributions of a pro rata share of 25% of the Debtor's Disposable Income until the earlier of 48 months after the Plan Effective Date, or the holders of Class 4 claims are paid in full plus interest calculated at the Federal judgment rate on the Plan Effective Date.

Section 4.05  <u>Class 5- The claims of insider unsecured creditors.</u>

(a) <u>Description</u>. Class 5 consists of the unsecured non-priority claims of insiders to the extent allowed under Code § 502.

(b) <u>Treatment</u>. Class 5 is NOT impaired by this Plan.

  (i) During 48 months after the Plan Effective Date Class 5 creditors will be paid on the following schedule:

4

After Class 4 claims are paid 5% of their allowed claims, holders of allowed Class 5 claims will be paid quarterly distributions of a pro rata share of 10% of the Disposable Income of the Debtor.  After Class 4 Claims are paid 15% of their allowed claims, Class 5 creditors will be paid quarterly distributions of a pro rata share of 20% of the Disposable Income of the Debtor. After Class 4 Claims are paid 30% of their allowed claims, Class 5 creditors will be paid quarterly distributions of a pro rata share of 35% of the Disposable Income of the Debtor. After Class 4 Claims are paid 50% of their allowed claims, Class 5 creditors will be paid quarterly distributions of a pro rata share of 50% of the Disposable Income of the Debtor.

Section 4.06   Class 6.- Equity Interests.

(a) Description. Class 6 consists of the equity interests in the Debtor.

(b) Treatment.  Class 6 is impaired by this Plan.  Holders of allowed Class 6 Interests will be cancelled on the Effective Date unless such Class 6 Equity Holder contributes cash to the on the effective date equal to 8% of allowed Class 4 non-insider non-priority unsecured claims (estimated to be $108,000). Shares in the Reorganized Debtor will be issued only to the Class 6 Equity Holders that make the required capital contribution. Class 6 Equity Holders that elect to become shareholders in the Reorganized Debtor by making the required capital contribution will be eligible for dividends out of Disposable Income not paid to creditors in Classes 1-5.

**Article V.    ALLOWANCE AND DISALLOWANCE OF CLAIMS**

Section 5.01   Disputed claim. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either:

(a) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

(b) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

Section 5.02   Delay of distribution on a disputed claim. No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

Section 5.03   Settlement of disputed claims.  The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

**Article VI.   PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

Section 6.01   Assumed executory contracts and unexpired leases.

(a) Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, pursuant to an order entered under Code § 365 before the

effective date or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date. A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 45 days after the date of the order confirming this Plan.

**Article VII.   MEANS FOR IMPLEMENTATION OF THE PLAN**

Section 7.01   Conditions Precedent to Effective Date. No less than one business day prior to the Effective Date the following transactions must have occurred:

(a) Funding of Equity Contribution by Class 6 Interest Holders**.** The Holders of the allowed Class 6 Equity Interests must have funded their equity contribution required under the treatment if Class 6 into to the Debtor's DIP Operating Account.

(b) Shares in Reorganized Debtor issued. 1 share will be issued to contributing Class 6 Equity Security Holders for every $100 contributed.

Section 7.02   Continued Existence and Vesting of Assets in Reorganized Debtor. The Debtor will continue in existence after the Effective Date as a corporation, with all the powers available to such entities under applicable law and pursuant to their organizational documents in effect prior to the Effective Date as such may be amended by the Plan, without prejudice to any right to terminate such existence (whether by merger or otherwise) under applicable law after the Effective Date. Except as otherwise provided in the Plan, on and after the Effective Date, all property of the Debtor's Estates and any property acquired by the Debtor or the Reorganized Debtor under the Plan will vest in the Reorganized Debtor. On and after the Effective Date, the Reorganized Debtors may operate their businesses and may use, acquire or dispose of property, and compromise or settle any Claims or Membership Interests, without supervision or approval of the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or the Confirmation Order.

Section 7.03   Management of the Reorganized Debtor. Continued full time management of the Debtor by Matthew Pobloske is essential to the successful performance of the Plan. So, from and after the Effective Date, the Reorganized Debtors will continue to be managed Matthew Pobloske. He will be paid a salary of $125,000 per year for his services.

**Article VIII. GENERAL PROVISIONS.**

Section 8.01   Definitions. The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

(a) Disposable Income means the income that is received by the debtor and that is not

reasonably necessary to be expended for the payment of expenditures necessary for the continuation, preservation, or operation of the business of the debtor. As a rule of thumb the Debtor will consider all income received after reserving 3 month's operating expenses, as working capital (initially $325,000).

Section 8.02 <u>Effective Date</u>. The effective date of this Plan is the first business day following the date that is 14 days after the entry of the confirmation order that the conditions precedent to the Effective Date have occurred or have been waived unless stayed by Court order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated.

Section 8.03 <u>Retention of Jurisdiction</u>. Notwithstanding confirmation or the Effective Date having occurred, the Court will retain and have full jurisdiction as is allowed under Title 28 of the United States Code, the Bankruptcy Code, or other applicable law to enforce the provisions, purposes, and intent of the Plan, including, without limitation, any proceedings which relate to:

(a) Determination of the allowance, classification, or priority of claims, liens and interests;
(b) Construing, implementing, enforcing, executing, or consummating the Plan, the Confirmation Order, any other order of the Court, any document attached as an exhibit to the Plan or contemplated by the Plan, or any other matter referred to in the Plan;
(c) Determination of all matters that are pending before the Court in the Chapter 11 Case prior to the Effective Date or that may arise after the Effective Date;
(d) Determination of any and all applications for allowance or requests for payment of administrative claims, including, without limitation, requests for allowance and payment of compensation and expense reimbursement of professional persons asserting administrative claims;
(e) Determination of motions for the rejection, assumption, or assignment of executory contracts or unexpired leases, and determination of the allowance of any claims resulting from the rejection of executory contracts and unexpired leases;
(f) Determination of all applications, motions, adversary proceedings, contested matters, and any other litigated matters instituted prior to the closing of the Chapter 11 Case;
(g) Modification of the Plan pursuant to §1127 of the Bankruptcy Code and before substantial consummation thereof on the Effective Date, remedy of any defect or omission in the Plan or Confirmation Order, reconciliation of any inconsistency within the Plan so as to carry out its intent and purpose, and reconciliation of any inconsistency between the Plan and any loan documents, so as to carry out the intent and purpose of the loan documents;

7

(h) Issuance of injunctions or taking such other actions or making such other orders as may be necessary or appropriate to restrain interference with the Debtor by any party with the Plan or its execution or implementation by any person;

(i) Issuance of such orders in aid of consummation of the Plan and the Confirmation Order, notwithstanding any otherwise applicable non-bankruptcy law, with respect to any person, to the full extent authorized by the Bankruptcy Code;

(j) Ordering the assumption or rejection of executory contracts or leases to which the Debtor is a party, which have not previously been resolved;

(k) Any determination necessary or appropriate under §505 of the Bankruptcy Code, or any other determination relating to priority tax claims, taxes, tax refunds, tax attributes, and tax benefits affecting the Debtor, its estate, or the Property through the end of the fiscal year in which the Effective Date occurs;

(l) Entry of a final decree closing the Chapter 11 Case; and

(m) Determination of such other matters, and for such other purposes, as may be provided in the Confirmation Order.

Section 8.04 <u>Retention of Claims and Causes of Action</u>. The Debtor will retain the right to pursue any and all claims or causes of action identified as assets of his estate on Schedule A/B, or arising under the Bankruptcy Code.

Section 8.05 <u>Severability</u>. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

Section 8.06 <u>Binding effect</u>. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

Section 8.07 <u>Captions</u>. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

Dated: March 17, 2020

**PROPONENT:**

BREAULT RESEARCH ORGANIZATION, INC., an Arizona corporation

By /s/ Matthew Pobloske
    Matthew Pobloske
Its: President and Chief Executive Officer

**WATERFALL, ECONOMIDIS, CALDWELL, HANSHAW & VILLAMANA, P.C.**

By: <u>/s/ Kasey C Nye #20610</u>
    *Attorneys for Debtor*